**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS FASULLO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-15263 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JUDICIAL INQUIRY BOARD, and | ) | |
| MICHAEL DENO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Louis Fasullo isn't pleased with how a state court case is going. Based on the docket sheet, Fasullo has filed at least 20 emergency motions, but the presiding judge denied them all. *See* Docket Sheet, *In re Georgia Rauen* (Dckt. No. 1-1, at 43–57 of 57). At other times, the judge hasn't allowed certain people to participate in hearings by Zoom, which hasn't gone over well with Fasullo.

It isn't uncommon for litigants – sometimes *both* litigants – to have issues with how a lawsuit is going. The judicial system is chock-full of paths for a litigant to take if a lawsuit isn't going smoothly. A party can file motions, or seek reconsideration of adverse rulings. If all else fails, appellate courts are open for business.

Fasullo went a different direction, literally and figuratively. He first went to the Illinois Judicial Inquiry Board, meaning the Illinois body that investigates allegations of misconduct by state court judges. Fasullo filed two requests asking the Board to investigate Judge MacCarthy, the presiding judge.

Fasullo hit a dead end and got nowhere fast. The Board declined to take disciplinary action against Judge MacCarthy, and Fasullo was none too pleased. So Fasullo went to the federal courthouse and filed the case at hand. But he didn't sue Judge MacCarthy. Fasullo brought claims against the Illinois Judicial Inquiry Board and its director, Michael Deno.

Fasullo wants the Board to discipline Judge MacCarthy for her purported mishandling of the case. And not just any discipline – Fasullo wants the Board to "prosecute" her. *See* Cplt., at 2 (Dckt. No. 1). Maybe Fasullo wants the Board to bring disciplinary charges against her, or maybe he has criminal charges in mind.

Fasullo is right about one thing. The Judicial Inquiry Board is the place to go to bring allegations of misconduct against a member of the state judiciary.

The Judicial Inquiry Board is an independent public entity that "investigate[s] complaints concerning active Illinois state court judges." *See Welcome to the Judicial Inquiry Board*, Judicial Inquiry Board, https://jib.illinois.gov/. The Board's authority arises from the Illinois Constitution. *See* Ill. Const. art. VI, § 15(b)–(j). It handles allegations of judicial misconduct and disability.

Members of the public can submit complaints of misconduct about particular judges, and the Board can act on its own, too. *See* Ill. R. of P. of J. Inquiry Bd. 4. As a first step, the Board performs a preliminary investigation and determines if the complaint is "patently frivolous or unfounded." *Id.*

If a complaint passes that hurdle, then the Board can "initiate and conduct an investigation to determine whether a reasonable basis exists for the filing of a complaint with the Commission." *Id.* The Board can hire counsel, retain an investigator, take testimony, serve discovery, interview the judge in question, and so on. *Id.*

2

After an investigation, the Board has the power to bring a complaint about judicial misconduct. But the Board itself doesn't discipline judges. That power belongs to the Courts Commission, a separate public body. *See* Ill. Const. art. VI, § 15(c).

The Courts Commission can drop the hammer on anyone holding a gavel. The Courts Commission can remove judges, suspend their pay, or otherwise reprimand them. *See* Ill. Const. art. VI, § 15(b)–(j); *Pincham v. Illinois Jud. Inquiry Bd.*, 872 F.2d 1341, 1344 (7th Cir. 1989); *People ex rel. Jud. Inquiry Bd. v. Cts. Comm'n*, 435 N.E.2d 486, 488 (Ill. 1982) ("The Courts Commission is the adjudicatory arm of the system of judicial discipline . . . with the authority to hear and determine complaints filed against judges by the Judicial Inquiry Board, which is the investigatory and charging arm of the disciplinary system[,] and with the authority to impose sanctions . . . .").

In effect, the Board functions like a prosecutor. It investigates possible misconduct, and has the discretion and the power to bring a complaint against a sitting judge. *See Welcome to the Judicial Inquiry Board*, Judicial Inquiry Board, https://jib.illinois.gov/ ("[T]he Judicial Inquiry Board [can] file a public complaint against a judge with the Courts Commission."). The Courts Commission, in turn, functions like the judiciary itself. The Courts Commission hears the dispute and adjudicates a charge of misconduct by members of the judiciary.

Fasullo took full advantage of the opportunity to complain about judicial misconduct. Judge MacCarthy is presiding over a case about the appointment of a guardian for a senior citizen. The petition for a guardian includes a tantalizing clue about the case, referring to Fasullo as the "Alleged Abuser." *See* Petition, *In re Georgia Rauen*, case no. 2025P004213 (Cir. Ct. Cook Cnty.). As the case has rolled along, the judge has made a number of rulings that Fasullo dislikes.

3

So Fasullo completed a form and asked the Board to investigate Judge MacCarthy for misconduct. *See* 11/18/25 Request (Dckt. No. 1-1, at 2 of 57). He apparently submitted two different requests to the Board, but he attached only one of them to the federal complaint at hand. *See* Cplt. (Dckt. No. 1).

The handwritten request for an investigation is difficult to follow. At one point, the form offers a cryptic morsel about the state court case: "falsely say he abused Georgia Raun[e]." *Id.* at 3 of 57. By the look of things, Fasullo "filed emergency motions about kidnapping by deceit" in the state court case, but Judge MacCarthy refused to accept the emergency motions. *Id.* at 5 of 57. The request form attached a 10-page emergency motion from the state court case, which rambled about Georgia Raune's stay in a nursing home, before offering musings about Governor Blagojevich and Martha Stewart.

The nature of Fasullo's problem with Judge MacCarthy is neither here nor there. Suffice it to say that Fasullo has an issue with her handling of the state court case. And he wants the Board to discipline the judge.

If Fasullo wants the Board to take action against the state court judge, the federal courthouse isn't the place to go. Fasullo lacks standing to sue.

"To establish Article III standing, 'a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

Fasullo stumbles over each step of the standing triple jump.

For starters, Fasullo has failed to allege a judicially cognizable injury. The handwritten complaint spans only two pages, and it leaves something to be desired when it comes to defining the injury.

Under one possible reading of the complaint, Fasullo alleges that he suffered an injury based on the Board's failure to bring disciplinary charges against the state court judge. *See* Cplt., at 2 (Dckt. No. 1) (stating that Fasullo "seeks a court order about does [sic] the JIB [*i.e.*, the Judicial Inquiry Board] have a duty to Louis [Fasullo]").

Maybe he has a criminal prosecution in mind. The complaint asks about the Board's "best way to prosecute the judge in this type of case." *Id.* "The judge has to restore Louis [Fasullo] has [sic] the agent and send the case to the Cook County State's Attorney for prosecution." *Id.*

The theory seems to be that Fasullo suffered an injury because the Board didn't take action against the state court judge. If that's the theory, it's a non-starter.

The existence of an injury is relatively straightforward when the government takes action against the plaintiff, or inflicts a harm on the plaintiff by refusing to act. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). When the plaintiff "is himself an object of the action (or foregone action) at issue," then " there is ordinarily little question that the action or inaction has caused him injury." *Id.* at 562.

But the existence of an injury is on shakier ground when a case involves the government's action, or failure to act, against someone else. "When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed." *Id.* (emphasis in original). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is

5

not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (citation omitted).

The Supreme Court recently applied that principle in a case about the government's prosecutorial powers. *See United States v. Texas*, 599 U.S. 670 (2023). Two states challenged the Department of Homeland Security's guidelines for immigration enforcement, alleging that the federal government was under-enforcing an immigration statute.

The statute required the detention of certain categories of aliens during removal proceedings. One provision provided that the Department of Homeland Security "shall" detain noncitizens when they are released from state prison, and another provision said that the Department "shall" detain noncitizens for 90 days after the entry of a final order of removal. *See* 8 U.S.C. § 1226(c); 8 U.S.C. § 1231(a)(2).

But the federal government decided to focus on arresting only a subset of those groups. The Department prioritized the arrest and removal of suspected terrorists and dangerous criminals, plus aliens who had recently arrived.

As the states saw things, the failure of the federal government to enforce the statute, and detain all aliens covered by those provisions, inflicted an injury on the states themselves by imposing costs. The states had to pick up the tab for aliens who were creating havoc and draining public resources when they shouldn't have been on the streets at all.

The Supreme Court ruled that the states lacked standing because the federal government's failure to arrest and prosecute aliens did not inflict an injury. The Supreme Court "has long held 'that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'" *Id.* at 674 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).

6

"[T]his Court has consistently recognized that federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions." *Id.* at 681. "[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S.*, 410 U.S. at 619; *see also Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 901 (7th Cir. 2012) (Easterbrook, J., concurring) ("That is a limit on standing; *Linda R.S.* holds that there is no justiciable controversy, which knocks out *all* substantive legal theories.") (emphasis in original).

Inaction against someone else does not inflict an injury on the plaintiff because there is no coercion *against* the plaintiff. "[W]hen the Executive Branch elects *not* to arrest or prosecute, it does not exercise coercive power over an individual's liberty or property, and thus does not infringe upon interests that courts often are called upon to protect. And for standing purposes, the absence of coercive power over the plaintiff makes a difference." *Texas*, 599 U.S. at 678 (emphasis added).

A person does not have a right to the arrest or prosecution of another person. So a plaintiff has not suffered a judicially cognizable injury if the state elects not to arrest or prosecute someone else. That's true even if the other person did, in fact, cause harm to the plaintiff. The lack of enforcement action against someone else, in and of itself, isn't an injury.

The Supreme Court's decision in *Texas* is only a stone's throw away from the situation in the case at hand. There, as here, the plaintiffs wanted the government to take action against someone else. But the states in *Texas* didn't suffer an injury when the federal government didn't arrest more people. Here, too, Fasullo didn't suffer an injury when the Board declined to discipline Judge MacCarthy. The lack of discipline is not a cognizable injury.

7

To have Article III standing, Fasullo "needs to show how he was injured by what the defendants did *to* him, rather than by what they didn't do to other people or what they didn't do *for* him." *See Del Marcelle*, 680 F.3d at 901 (Easterbrook, J., concurring) (emphasis in original). Fasullo made no such showing.

Another possible reading of the complaint is that the state court judge, not the Board, inflicted an injury by making bad rulings. If that's the theory, it runs into other problems. Any alleged injury from the state court isn't fairly traceable to the Board, and it isn't redressable by this Court, either.

The existence of an injury isn't enough to establish standing. "[T]he plaintiff 's injury must be 'fairly traceable to the challenged action of the defendant,' meaning that 'there must be a causal connection between the injury and the conduct complained of.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan*, 504 U.S. at 560). "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party . . . standing is not precluded, but it is ordinarily substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (internal quotations omitted).

Fasullo's claim has traceability problems. Fasullo takes issue with the rulings by the state court. Even so, the Board didn't make or cause the bad rulings (if any). The rulings came from Judge MacCarthy, not the Board. The Board itself didn't cause any harm to Fasullo.

The rulings by the state court aren't fairly traceable to the Board itself, even if the rulings injured Fasullo. The Board's decision to withhold discipline doesn't change that conclusion. If the state court rulings caused an injury, then the Board's later decision not to seek discipline didn't cause it. The alleged injury happened before the Board did anything.

8

To top it off, Fasullo's complaint faces significant redressability problems. A judgment by this Court against the Board would do nothing to remedy any harm caused by the rulings by the state court.

Standing doesn't exist unless the district court could do something about the problem. "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted).

The Supreme Court in *Texas* primarily rested its holding on the injury prong of the standing analysis. But something could be said for relying on the redressability prong, too. In fact, the redressability rationale received more support than the holding about the injury. Five of the Justices supported the holding about the non-existence of an injury, but eight of the Justices concluded that the claim lacked redressability. *See Texas*, 599 U.S. at 678 ("In short, this Court's precedents and longstanding historical practice establish that the States' suit here is not the kind redressable by a federal court."); *id.* at 689 (Gorsuch, J., concurring) ("As I see it, the jurisdictional problem the States face in this case isn't the lack of a 'judicially cognizable' interest or injury. . . . The problem the States face concerns something else altogether – a lack of redressability."); *id.* at 709 (Barrett, J. concurring) ("In my view, this case should be resolved on the familiar ground that it must be likely, as opposed to merely speculative, that any injury will be redressed by a favorable decision.") (cleaned up).

The claim in *Texas* faced redressability problems for a few different reasons. For starters, a statute squarely prohibited district courts from issuing injunctions in immigration enforcement matters. *Id.* at 689 (Gorsuch, J., concurring). What's more, redressing the lack of arrests would require courts to inject themselves in prosecutorial decision-making, which is the province of the executive branch. *Id.* at 677–80.

9

For similar reasons, Fasullo lacks standing because this Court can't redress any injury inflicted by the state court. Again, Fasullo sued the Board, not Judge MacCarthy herself. At most, this Court could enter judgment against the Board.

But a judgment against the Board wouldn't fix any harm caused by the state court judge. A judgment directing the Board to discipline Judge MacCarthy wouldn't solve the underlying problem. The Board – like the Department of Homeland Security in *Texas* – enjoys substantial discretion in enforcement matters. This Court couldn't compel the Board to do anything without getting out of its lane and stepping on the toes of a separate government body that has discretion over whether to act.

Even if the Board sought discipline against Judge MacCarthy, doling out discipline wouldn't change the rulings themselves. Disciplining the judge wouldn't change the judge's decisions. If the rulings are the disease, then disciplining Judge MacCarthy isn't the cure.

The Supreme Court cemented the point in *Linda R.S.* There, a mother sued the state for failing to prosecute the father for neglecting to pay child support. The Supreme Court held that the mother lacked standing because she "made no showing that her failure to secure support payments results from the nonenforcement" of the child support statute. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973).

Issuing a judgment that compelled the prosecution of the father would not have solved the problem, meaning the lack of child support payments. "[I]f appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id.*

10

So too here. A judgment that directs the Board to bring charges against Judge MacCarthy would not change the fact that her rulings are already on the books.

If anything, the redressability problem here runs deeper than it did in *Linda R.S.* The Board doesn't have the power to discipline Judge MacCarthy. At most, the Board could file a complaint against the judge. But the Board couldn't adjudicate it. The Courts Commission, not the Board, is the body that decides whether to discipline a state court judge.

If the state court rulings are the injury, then a judgment against the Board would not redress the harm. Fasullo wants this Court to compel the Board to bring disciplinary charges against Judge MacCarthy. But even if this Court granted that request, compelling the Board to bring charges would not automatically lead to different decisions in the state court case.

At most, the Board could bring charges. And then, the Courts Commission would have the power to make its own decision about whether to discipline Judge MacCarthy. The Courts Commission is a second, independent actor that stands in the way of any discipline.

Even if the Courts Commission sanctioned Judge MacCarthy, and removed her from the bench, it would not change a thing in the state court case. The ruling are the rulings. Disciplining a judge does not make the rulings go away. Challenging rulings requires a motion for reconsideration, or an appeal.

Simply put, if Fasullo wants the state court to change its decisions, then suing the Board isn't the way to get it.

What's more, federalism problems loom large, too. Fasullo apparently wants this Court to enter judgment against the Board to discipline Judge MacCarthy, in the hope that Judge MacCarthy will change her rulings. But federal district courts do not sit as an appellate court over state courts, and have no power to review their decisions. *See Verizon Maryland, Inc. v.*

11

*Public Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002); *Gilbank v. Wood County Dep't of Human Services*, 111 F.4th 754, 765 (7th Cir. 2024); 28 U.S.C. § 1257(a).

Separation-of-powers concerns animated the Supreme Court's decision in *Texas*. The Supreme Court was leery of compelling arrests because Article II of the Constitution entrusts law enforcement to the executive branch. *See Texas*, 599 U.S. at 678–80.

By the same token, federalism is another reason to conclude that the claim at hand isn't redressable. Federal courts don't oversee state courts (except the Supreme Court itself), and can't compel different rulings or order the discipline of state court judges for making wrong decisions.

However you slice it, Fasullo lacks standing to bring a claim against the Board itself. Fasullo did not suffer a judicially cognizable injury from the Board's decision not to discipline Judge MacCarthy. The state court's rulings aren't fairly traceable to the Board itself. And if the problem is the underlying rulings by the state court, then a judgment from this Court that compels disciplinary action wouldn't solve it.

The long and the short of it is that Fasullo lacks standing. Maybe the state court case isn't going to Fasullo's liking. But running to the federal courthouse is a step in the wrong direction. The complaint is dismissed for lack of standing.

Date:   May 13, 2026

_____
Steven C. Seeger
United States District Judge

12